UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61700-CIV-GAYLES/SELTZER

VISION POWER, LLC, a Florida limited
liability company, and GREGG WILLIAMS,
individually,

        Plaintiffs,

vs.

MIDNIGHT EXPRESS POWER BOATS, INC.,

        Defendant.

_____/

## <u>ORDER</u>

**THIS CAUSE** has come before the Court upon the Expedited Motion to Compel Expedited Vessel Inspection and Testing [DE 30] filed by Defendant, Midnight Express Power Boats, Inc. ("Defendant"). Defendant seeks an order compelling Plaintiffs, Vision Power, LLC, and Gregg Williams ("Plaintiffs"), to make available for inspection and testing the 40-meter Westport Yacht "Vision" prior to its scheduled sale on January 31, 2019.

This is an action to recover damages alleged to have resulted from the design, manufacture, and sale of a defective speedboat to Plaintiffs by Defendant [DE 13]. The speedboat suffered damage while being towed by the yacht that is the subject of this Motion. According to Plaintiff's Amended Complaint, the yacht towed the speedboat at approximately 16 knots in 2-3 foot seas, which Defendant contends was more than twice the maximum safe speed as specified by Coast Guard standard towing procedures. Defendant asserts that the improper towing subjected the speedboat to damaging wave forces.

Defendant never served a Request for Production pursuant to Fed. R. Civ. P. 34 or Rule 26(d)(2) (authorizing early Rule 34 requests).[1] However, in October 2018, Defendant requested that Plaintiff preserve all physical evidence relating to the incident, including the 34' speedboat.[2] The preservation letter included equipment, records, and data from the Vision, but did not include a request to test the yacht. On January 15, 2019, Plaintiffs notified Defendant that the Vision was under contract for sale, with an expected closing date of January 31, 2019, and offered to make the yacht available for inspection prior to the sale [DE 30-2]. Defendant responded with a list of items on the yacht that it wished to examine, and it demanded "the opportunity to observe the wave train behind the Yacht at 16 knots" [DE 30-3]. According to Plaintiffs, the inspection of the yacht took place on January 22, 2019[3] [DE 32]. However, Plaintiffs refused to allow testing or operation of the yacht in open seas on the ground that such testing would jeopardize the pending sale and could be deemed a material breach of the sales agreement by adding more hours to the yacht's engine. Thus, the only issue remaining for the Court is Defendant's request to

---

[1] Defendant states that although this matter was filed in July 2018, it was unable to serve a formal Request for Production to test the yacht because the parties have not yet conferred as required by Rule 26(f). See Fed. R. Civ. P. 26(d)(1) (setting forth timing of discovery). Defendant places the blame for not holding the Rule 26(f) conference on Plaintiffs, who allegedly refused to confer before the pending Motion to Dismiss was resolved. The Court notes that counsel are "jointly responsible for scheduling the conference." Fed. R. Civ. P. 26(f)(2). In addition, Rule 26(d)(2) permits the serving of "early Rule 34 requests" by the defendant 21 days after service of the summons and complaint.

[2] The Court notes that the parties have conducted testing and evaluation of the speedboat that is the subject of this lawsuit.

[3] Defendant had requested inspection and, where applicable, copying of Vision's records, books, GPS data, drawings, logs, video monitoring equipment, towing cleats, bollards, and tow brindle [DE 30-3].

test the yacht by running it at 16 knots in order to observe and measure the yacht's wake train.

Defendant argues that Plaintiffs had a common law duty to preserve the yacht because it knew or reasonably should have known that the yacht is relevant to the litigation. See Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 127 (S.D. Fla. 1987). Defendant argues that testing is necessary to permit it recreate the conditions that existed at the time the speedboat was swamped and to "enable Naval Architects to verify calculations of the stern wave conditions experienced by the [speed] boat at the time of failure." According to Defendant, Plaintiffs knew of their obligation to preserve the yacht and purposefully delayed notifying Defendant that the yacht would be sold until two weeks before the scheduled closing. Thus, Defendant asks the Court for an order compelling testing of the yacht or, alternatively, shifting the cost of chartering a similar yacht[4] to Plaintiffs, or, finally, enjoining Plaintiffs from raising the issue that the wave train calculations relied upon by Defendant were theoretical and not based upon empirical observations [DE 40, p. 7].

Defendant relies on a spoliation theory to argue that Plaintiffs have a duty to preserve the yacht because the requested testing is relevant to its defenses. However, relevance is not sufficient to establish a duty to preserve evidence. The duty to preserve applies to evidence that is crucial to a party's claim or defense. Point Blank Sols., Inc. v. Toyobo America, Inc., 2011 WL 1456029, at *8 (S.D. Fla. Apr. 5, 2011). Where a party can still prove its case through evidence obtained elsewhere, the missing evidence is not

---

[4] Plaintiffs have introduced a compilation of quotes that show the cost to charter a similar model yacht for a week would range between $90,000 and $145,000 [DE 38-1].

considered crucial for purposes of spoliation. <u>Managed Care Sols., Inc. v. Essent Healthcare, Inc.</u>, 736 F. Supp. 2d 1317, 1323-24 (S.D. Fla. 2010)).

Here, Defendant acknowledges that its Naval Architects have provided calculations of the yacht's wave train using the Vision's hull form and applying Naval Architecture formulas and principles. Defendant also relies upon towing procedures as set forth in the U.S. Coast Guard Standard Towing Procedures and Coast Guard Boat Crew Seamanship Manual. Defendant's proposed re-enactment of the wave train appears calculated to verify the evidence it already possesses. The duty to preserve evidence does not apply to evidence that is cumulative. <u>See</u> <u>Managed Care Solutions</u>, 736 F. Supp. 2d at 1327–28 (finding that the allegedly spoliated evidence was not crucial to the plaintiff's claims because it could still prove its case through other evidence already obtained elsewhere); <u>Floeter v. City of Orlando</u>, 2007 WL 486633, at *6 (M.D. Fla. Feb. 9, 2007) (finding no spoliation where missing emails may be relevant to Plaintiff's case but they were not critical and would have been cumulative). Accordingly, the undersigned concludes that Plaintiffs do not owe a duty to preserve the yacht "Vision."

Additionally, to be a proper subject of discovery, the evidence must not only be relevant, it must be proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2). As Plaintiffs note, the requested testing to replicate the conditions that led to the damage of the speedboat is essentially impossible: the same conditions – wave height, depth of water, weather – cannot be replicated and the speedboat underwent mutual destructive testing by the parties. Thus, serious questions exist about the relevancy of any re-creation.

The proposed testing also appears, under the circumstances, to lack proportionality to the needs of the case. As discussed above, Defendant has obtained mathematical data

to illustrate how the wave train damaged the speedboat. By contrast, running the yacht to conduct the proposed test could have a serious, adverse impact on the sale of the yacht. And the cost of conducting the proposed test using a charter vessel is high in comparison to the amount of damages at issue in the case.

Given the proposed test's relatively limited relevance and lack of proportionality to the needs of the case, the Court declines to compel Plaintiffs to produce the yacht "Vision" for Defendant to run its proposed tests. Should Defendant determine that it needs the empirical data to be obtained from such a test, Defendant should bear the cost of obtaining a charter vessel. In that Plaintiffs do not have a duty to preserve or present the Vision to Defendant for testing, the Court declines to impose a negative inference against the Plaintiffs as to what such testing might have shown.[5] Accordingly, for the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Expedited Motion to Compel Vessel Inspection and Testing is **DENIED.**

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 30th day of January 2019.

BARRY S. SELTZER
United States Magistrate Judge

Copies furnished counsel via CM/ECF

---

[5] The Court notes that fundamental fairness would preclude Plaintiffs from arguing that empirical data obtained from testing would have been more accurate than the theoretical data presented by Defendants. Likewise, Plaintiffs should not be permitted to introduce testimony based upon empirical testing of the yacht "Vision."