dUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 18-cv-61700-SINGHAL/Valle

VISION POWER, LLC, a Florida limited liability
company, and GREGG WILLIAMS, individually,

    Plaintiffs,

v.

MIDNIGHT EXPRESS POWER BOATS, INC., a
Delaware corporation,

    Defendant.
_____/

## CORRECTED ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION[1]

Plaintiffs Vision Power, LLC ("Vision Power") and Gregg Williams ("Williams") (collectively, "Plaintiffs") seek class certification and appointment as lead plaintiffs in this class action against Defendant Midnight Express Power Boats, Inc. ("Midnight Express"), a boat manufacturer from whom Williams purchased a specially-designed, 34' speedboat ("Subject Boat"). Upon reviewing the pleadings, counsels' arguments, applicable law, and the record before the Court, for the reasons stated below, the Court dispenses with oral argument and rules accordingly:

    (1)    Williams individually does not have standing to represent the putative class as a lead plaintiff; and

    (2)    The putative class fails certification because it cannot satisfy the typicality factor under Federal Rule of Civil Procedure 23(a)(3) or the requirement of ascertainability.

---

[1] The Court enters this corrected order for the limited purpose of correcting two issues with citations on pages 10 and 11.

Consequently, Plaintiffs' Motion for Class Certification and Appointment of Lead Counsel ("Motion") (DE [94]) is **DENIED**.

I. **BACKGROUND**[2]

In December 2014, Williams custom-ordered the Subject Boat from Midnight Express. *See* 3d Am. Compl. ¶¶ 6, 11 (DE [70]); *see also* Ex. "B" to 3d Am. Compl. (DE [70-2]). About five months later, the bill of sale assigned interest in the Subject Boat from Gregg Williams personally to Vision Power, *see* Ex. "C" to 3d Am. Compl. (DE [70-3]), a Florida limited liability company, the sole member of which is "the Gregg G. Williams 2006 Trust," *see* 3d Am. Compl. ¶ 2 (DE [70]). Less than a week later, Vision Power registered the Subject Boat in the State of Delaware. *See* Ex. "D" to 3d Am. Compl. (DE [70-4]).

In February 2018, Vision Power hired a crew to tow the Subject Boat on the back of a yacht through international waters. 3d Am. Compl. ¶¶ 28–29 (DE [70]). What happened during that journey is the subject of this litigation. En route to its destination, the center console of the Subject Boat sheared in half and dislodged, smashing into the stern and causing significant damage to the Subject Boat. 3d Am. Compl. ¶ 40 (DE [70]). Plaintiffs contend Midnight Express caused the damage to the Subject Boat by failing to follow its own construction specifications and not using "a high-grade structural adhesive" named Plexus, and rather using "inadequate short bolts, with non-structural cosmetic light-duty washers poorly fastened to fiberglass." Mot. to Certify Class 1 (DE [94]).

Not so, says Midnight Express. It pins blame on the towing crew and the manner in which the crew towed the Subject Boat. *See generally* Resp. 1–3 (DE [105]). Although

---

[2] This Order addresses the facts relevant only to the issue of class certification and the Court assumes the parties are well informed of the factual background of this case.

the crew's captain had "substantial experience" operating large yachts through international waters, he had never operated a yacht as large as the one that day. *See* Ex. "D" to 3d Am. Compl. (DE [70-4]); Resp. 1–2 (DE [105]). He was not licensed to tow the Subject Boat. Resp. 1–2 (DE [105]). He did not inquire as to the proper speed at which the yacht could tow the Subject Boat. Resp. 1–2 (DE [105]). Consequently, the crew towed the Subject Boat at a speed of 16 knots, while, according to the damage report, the maximum safe speed at which it should have been towed was 7.46 knots. *Id.* at 2; *see also* Ex. 7 to Resp. (DE [105-7]).

The Third Amended Complaint is the current iteration of Plaintiffs' case against Midnight Express. They bring claims for breaches of warranties and breach of contract. They pray for monetary damages, including consequential damages.

The instant motion, however, centers around certifying their proposed class. Plaintiffs propose "a class of all persons who purchased center console speedboats from Midnight Express, including the Open 34' and all other variations of speedboats that have the same center console design." 3d Am. Compl. ¶ 68 (DE [70]). The class seeks injunctive relief under Federal Rule of Civil Procedure 23(b)(2) accordingly:

> [R]equiring Midnight Express to provide appropriate warning to all consumers of similar vessels that its manufacturing deficiencies could lead to substantial injury and requiring Midnight Express to design and implement an appropriate corrective action for all such consumers, including to members of the class.

*Id.* at 24 "Prayer for Relief" para. C.

## II. LEGAL STANDARD

A district court is afforded broad discretion in deciding whether to certify a class. *Joffe v. GEICO Indem. Ins. Co.*, 2019 WL 5078228, at *1 (S.D. Fla. July 31, 2019).

However, this discretion is not unfettered. Our case law instructs that a court must engage in a "rigorous analysis," *Ohio State Troopers Ass'n v. Point Blank Enters., Inc.*, 347 F. Supp. 3d 1207, 1217 (S.D. Fla. 2018), and "the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation," *Brown v. Electrolux Home Prod., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

Federal Rule of Civil Procedure 23 controls the inquiry. To begin, the proposed class must satisfy the following four explicit factors in Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The proposed class must also satisfy Rule 23(a)'s implicit requirement that the class be "adequately defined and clearly ascertainable." *Ohio State Troopers Ass'n*, 347 F. Supp. 3d at 1217.

If the proposed class satisfies the four factors of numerosity, commonality, typicality, and adequacy, as well as the implicit requirement of ascertainability, it must then demonstrate entitlement to class relief under one of the three provisions in Rule 23(b). *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1279 (11th Cir. 2000). The proposed class here seeks injunctive and declaratory relief under Rule 23(b)(2), which provides: "[T]he party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory

4

relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Stated otherwise, class relief under Rule 23(b)(2) requires the Court to determine: (1) whether Midnight Express "has acted on grounds generally applicable to the class as a whole," and (2) whether "declaratory or final injunctive relief is the appropriate and primary remedy." *Ohio State Troopers Ass'n*, 347 F. Supp. 3d at 1218.

## III. DISCUSSION

### A. Standing Requirement for Class Certification

For the moment, the Court must set aside the Rule 23 factors to address the "threshold matter" of Vision Power's and Williams's standing to represent the putative class. *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000); *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) ("Any analysis of class certification must begin with the issue of standing."). "[O]nly after" the Court makes this determination "should it address the question whether the named plaintiffs have representative capacity . . . to assert the rights of others." *Ohio State Troopers Ass'n*, 347 F. Supp. 3d at 1218. Midnight Express contends neither Vision Power nor Williams has standing to represent the class. *See generally* Mot. to Certify Class 4–6 (DE [105]). The Court agrees, but only as to Williams.

#### 1. Legal Standard for Standing

Article III of the United States Constitution requires three elements that form the "irreducible constitutional minimum" for standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). An

5

injury "must be . . . distinct and palpable, and not abstract or conjectural or hypothetical." *Lujan*, 504 U.S. at 560. "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Redressability tests "whether a plaintiff 'personally would benefit in a tangible way from the court's intervention.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 n.5 (1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 508 (1975)). "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

### 2. Williams's Standing

"At the heart of Article III standing is the existence of an injury, not [necessarily] ownership." *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262–63 (11th Cir. 2006). Indeed, a plaintiff can show a "lesser property interest, such as a possessory interest, . . . sufficient to establish standing." *Id.* Thus, in addition to the familiar requirement of "alleg[ing] facts from which it appears there is a substantial likelihood that he will suffer injury in the future," *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346–47 (11th Cir. 1999), it follows that a plaintiff must also demonstrate at least some sort of possessory interest in the property at issue, *Via Mat Int'l*, 446 F.3d at 1263.

Here, despite Williams's signing the purchase-and-sale agreement, the bill of sale executed about five months later shows that Subject Boat was registered in the name of "Vision Power," not "Williams," *see* Ex. "C" to 3d Am. Compl. (DE [70-3]), and the boating registration and certificate was registered in Delaware under "Vision Power," not

6

"Williams," see Ex. "D" to 3d Am. Compl. (DE [70-4]).  While he need not show ownership, Williams has failed to show *any* present, legal interest—not even a minimum possessory interest—in the Subject Boat.  Therefore, the Court cannot find that "he is suffering an ongoing injury or faces an immediate threat of injury."  *Gatore v. U.S. Dep't of Homeland Sec.*, 327 F. Supp. 3d 76, 103 (D.D.C. 2018).

*Breakstone v. Caterpillar, Inc.*, 2010 WL 2164440 (S.D. Fla. 2010) is sufficiently similar.  In *Breakstone*, the proposed lead plaintiff purchased his boat in 2001, sold it in 2007, and filed the class action three years later in 2010.  *Id.* at *1.  With "no present personal stake in any of the injunctive relief sought," the proposed lead plaintiff lacked standing and the court denied class certification.  *Id.*  In sum, Williams lacks standing to represent the putative class.

### 3. Vision Power's Standing

The analysis for Vision Power, however, is different.  It does not have a possessory-interest problem.  However, Midnight Express attacks Vision Power's standing under somewhat of a redressability theory.  The class seeks an injunction in the form of compelling Midnight Express to notify its customers of the alleged manufacturing defect.  Midnight Express argues that this would not apply to Vision Power because it "already knows" about the alleged problem of the center consoles dislodging from the speedboats. Therefore, according to Midnight Express, Vision Power cannot benefit from the class-wide notice.  Resp. 8 (DE [105]).  Midnight Express cites to three cases.  The Court is not persuaded by any. Each case stands for generic, black-letter law that injuries must be "real and immediate threat[s]", *Drayton v. W. Auto Supply Co.*, 2002 WL

7

32508918, at *4 (11th Cir. Mar. 11, 2002), and continuous and ongoing, *Howard v. City of Greenwood*, 783 F.2d 1311, 1312 n.2 (5th Cir. 1986).

However, Vision Power's[3] response is not particularly helpful. It tries to reduce the issue to an overly simplistic this-has-already-been-decided argument. Reply 2 (DE [106]). In (correctly) pointing out that Midnight Express had raised standing in its motions to dismiss (DE [20], [48]), Vision Power represents: "This Court correctly **rejected** [the] previous standing challenges, and recognized that both Gregg Williams and Vision Power have Article III standing to assert claims against Midnight Express." Reply 2 (DE [106]) (bolded emphasis in original). But, for this proposition, it cites to the Report and Recommendation (DE [64]), where the magistrate judge analyzed Midnight Express's motion to dismiss the Second Amended Complaint.

The Court finds this unpersuasive for several reasons. First, the Court never affirmed or adopted the Report and Recommendation; it was terminated by order of the Court (DE [74]) when Plaintiffs unilaterally filed the Third Amended Complaint (DE [70]), rendering the motion to dismiss *and* the Report and Recommendation moot. Yet, even if the Court had affirmed and adopted the Report and Recommendation, it could not control the outcome here because it did not address standing.

The Court finds Vision Power meets the three elements of standing to represent the putative class. Further, the Court finds Midnight Express's premise untenable. To accept its position would be to rule that there are no set of facts that would *ever* allow a proposed lead plaintiff to represent a class when seeking Rule 23(b)(2) injunctive relief.

---

[3] Because the Court has determined Williams lacks standing, the lead plaintiff will be referred to as "Vision Power" only throughout the remaining portions of this Order.

8

It is axiomatic that a proposed lead plaintiff would "already know about the alleged problem" for which it files its lawsuit. To hold any other way would, by its very definition, mean a proposed lead plaintiff could not sue for an injury because it "already knows" of that injury. Simply, if a proposed lead plaintiff is forever precluded from representing a class because it "already knows" of the alleged problem and, therefore, "cannot benefit" from a court-ordered notice, Rule 23(b)(2) would be rendered entirely superfluous. This, the Court cannot do. *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[C]ourts should disfavor interpretations of statutes that render language superfluous . . . ."). Vision Power has standing to represent the putative class.

### B.  Class-Certification Factors Under Rule 23

Because there is a lead plaintiff with standing to represent a potential class, the Court will now return to the Rule 23 factors and assess whether the proposed class is able to proceed.

#### 1.  Numerosity

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specific threshold," *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007), and it is generally a "low hurdle" for a lead plaintiff to make an initial showing, *Manno v. Healthcare Rev. Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013). *See also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (writing that a lead plaintiff "bears the burden of making *some* showing" that the class is too numerous for individual claims (emphasis in original)).

Despite the low hurdle, this is a close call. *At most*, the putative class purports to represent potentially seventy-six members. It bases this number on an interrogatory

response by Midnight Express, where the company reported having built and sold that number of speedboats "for the models comprising the proposed class." *See* Reply 3 (DE [106]). The Court questions this number, as the flaw in this calculation is readily apparent: It includes all 34', 37', and 39' center-console boats sold by Midnight Express. *Id.* Vision Power argues that all three models of speedboats are "very similar." *Id.* Because this factor's hurdle is low, the Court will accept this estimation and find numerosity satisfied.

### 2. Commonality

While commonality and typicality are similar, they differ in one key aspect. *See* Fed. R. Civ. P. 23(a)(2), (3); *Cooper v. S. Co.*, 390 F.3d 695, 713–14 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). Commonality "refers to the group characteristics of the class as a whole [while] typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Cooper*, 390 F.3d at 714 (alteration in original). Although neither factor "mandates that all putative class members share *identical* claims," *id.* (emphasis added), the lead plaintiff must still, at the very least, share "the same essential characteristics as the claims of the class at large," *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).

Like numerosity, "[t]he threshold for commonality is not high." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003). Thus, the Court accepts the class's claims that they share the same essential characteristics, and that they all purchased "very similar" model speedboats of 34', 37', or 39' with open-center consoles that were *not* attached by Plexus.

### 3. Typicality

However, even assuming the class satisfies commonality, it fails typicality. "Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Bouton v. Ocean Props., Ltd.*, 322 F.R.D. 683, 698 (S.D. Fla. 2017). "[T]he claim of a class representative is typical if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Id.* (internal quotation omitted).

Based on Vision Power's claims against Midnight Express, it may appear that the typicality factor is satisfied. But what frustrates typicality here is the fact that there are no allegations that *any* other class member's boat was towed by the crew on *a* yacht, much less *the same* yacht. Under the so-called "unique defense problem," class certification is "vitiated" when the defendant has an affirmative defense unique only to the lead plaintiff. *See Ross v. Bank S., N.A.*, 837 F.2d 980, 990 (11th Cir.), *vacated on other grounds*, 848 F.2d 1132 (11th Cir. 1988).

Given the allegations in the Third Amended Complaint and Midnight Express's answer, there is sufficient factual dispute to be left to a jury to determine whether the towing crew's actions were a superseding, intervening cause of *Vision Power's* damages. And this goes to the heart of Midnight Express's defense theory; Midnight Express specifically raises it as its fifth affirmative defense. *See* Answer to 3d Am. Compl. ¶ 15 (DE [73]). The same cannot be said for any other class member's damages.

The Court is keenly aware of the Eleventh Circuit's words in *Ross* that "the court is not *required* to deny certification" based on this reason alone. 837 F.2d at 991 (emphasis in original). But this is where the Eleventh Circuit leaves like matters to the

Court's discretion. While an issue of disputed fact is not unique per se to any other case, it is not insignificant here. "The existence of a unique defense certainly is relevant to the certification decision." *Ross*, 837 F.2d at 990. Because this affirmative defense is necessarily unique only to Vision Power's claims against Midnight Express, allowing Vision Power to represent the class plaintiffs only then to spend substantial time at trial defeating Midnight Express's fifth affirmative defense "would preoccupy [the trial] to the detriment of the interests of absent class members." *Colomar v. Mercy Hosp., Inc.*, 242 F.R.D. 671, 678 (S.D. Fla. 2007).

Other courts have used far more expansive reasoning to deny class certification under the unique defense problem. In *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982), our sister district found that such a defense need "only" be "arguable." The Court is satisfied here that such a defense from Midnight Express is stronger than "arguable"; the defense is certain. No party denies the crew towed the Subject Boat on the yacht. The disagreement is only as to the crew's liability. Given the totality of the circumstances, the proposed class cannot go forward with such unique allegations to the lead plaintiff's case-in-chief.

### 4. Adequacy

In the Eleventh Circuit, class certification is precluded "where the . . . interests and objectives of the named representatives differ significantly from the . . . interests and objectives of unnamed class members." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003). This factor requires the Court to assess "(1) whether any substantial conflicts of interest exist between the representatives and the class, and (2) whether the representatives will adequately prosecute the action." *Id.* at 1189. The

Court sees no issues with this factor. Neither party seriously contends there is a "fundamental conflict" between Vision Power and the class members.

### 5. Ascertainability

A class is adequately defined and ascertainable "if the proposed class 'can be ascertained by reference to objective criteria' and the members thereof can be identified through 'a manageable process that does not require much, if any, individual inquiry.'" *A.R. v. Dudek*, 2015 WL 11143082, at *5 (S.D. Fla. Aug. 7, 2015) (quoting *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014)). Of course, "[t]he level of precision, or 'definiteness' required, varies depending on the type of class sought to be certified." *See Kenneth R. ex rel. Tri-Cty. CAP, Inc./GS v. Hassan*, 293 F.R.D. 254, 263–64 (D.N.H. 2013). While "the same level of precision is not required when a party seeks to certify a class under 23(b)(2)," *A.R.*, 2015 WL 11143082, at *5, courts are not in harmony on what exactly is the proper scrutiny. What does not change, however, is the mandate that classes cannot be "overly broad, amorphous, [or] vague." *Perez v. Metabolife, Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003).

The Court agrees with Midnight Express; the proposed class by Vision Power cannot be defined by objective criteria. Midnight Express points the Court to Eleventh Circuit case law that stands for the position that classes are neither clearly defined nor identifiable through a "manageable process" under similar circumstances to those here. *See, e.g.*, *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 947–949 (11th Cir. 2015) ("Karhu's bare proposal that the district court ascertain class members through VPX's 'sales data' was insufficient to satisfy the ascertainability requirement."). Further, in *Melton v. Century Arms, Inc.*, 2018 WL 6980715, at *7 (S.D. Fla. Nov. 28, 2018), the court

determined the proposed class failed ascertainability when the determination of its members would require information of "secondary (and tertiary and beyond) market purchasers."

Because the Court sees this case no differently than *Melton* and *Karhu*, there is no reason to draw distinctions where they do not exist. The class here fails ascertainability, too. The definition of who fits within a class of "owners of defectively designed and manufactured . . . 34', 37', and 39' center-console boats sold from 2012 to the present" requires far too much work to be considered "administratively feasible."

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Certify Class and Appoint Lead Counsel (DE [94]) is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 18th day of February 2020.

**RAAG SINGHAL**
**UNITED STATES DISTRICT JUDGE**

Copies to counsel via CM/ECF